PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 4:22-CR-494-8 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| CHRISTINA MAY ) | |
| ) | **ORDER** |
| Defendant. ) | [Resolving ECF No. 448] |
| ) | |

Pending before the Court is Defendant Christina May's Motion for Sentence Reduction under 18 U.S.C § 3582(c)(1)(A) (ECF No. 448). Appointed counsel for May filed supplements to that Motion, ECF No. 459 (sealed) and ECF No. 460), and the Government responded in opposition and supplemented its opposition with recent legal authority (ECF No. 467 and ECF No. 474). May replied. (ECF No. 471). The Court has reviewed the parties' filings, exhibits, and the applicable law. On December 18, 2024, the Court held oral argument on the Motion.

For the reasons below, the Court grants May's Motion, reduces her sentence of incarceration to time served, modifies her term of supervised release to include location monitoring until a bed is available at a residential reentry center where she will reside for six months, and orders May's immediate release.

**I.  Background**

A federal grand jury indicted May along with thirteen others for their participation in a drug trafficking operation. Several of those charged were blood relatives or romantically involved with another co-defendant. May was charged with Conspiracy to Possess with the

(4:22-CR-494-8)

Intent to Distribute and to Distribute Cocaine, Cocaine Base, Heroin, Fentanyl, and Fentanyl Analogues, in violation of 21 U.S.C. § 846; Using a Communication Facility in Furtherance of Drug Trafficking Crime, in violation of 21 U.S.C. § 843(b); and Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  *See* Indictment (ECF No. 1).  May pleaded guilty to the Conspiracy and Drug Distribution charges pursuant to a written plea agreement.  *See* Plea Agreement (ECF No. 321).  On March 27, 2024, the Court sentenced May to the custody of the Bureau of Prisons for a term of 24 months with three years of supervised release.  *See* Criminal Judgment (ECF No. 76).

      May is serving her sentence of imprisonment at FPC Alderson and the Bureau of Prisons ("BOP") anticipates her release on February 22, 2026.  *See Inmate Locator*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/?os=vb.&ref=app (last accessed Dec. 18, 2024).  In the instant Motion, May requests that the Court order her immediate release to home detention under 18 U.S.C. § 3582(c)(1)(A), because of the extraordinary and compelling circumstances facing her family.  As explained below, the Court finds that May's release, with modified conditions of supervised release, is appropriate.

## II.  Analysis

      Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP or the defendant.  The Sixth Circuit provides that district courts must follow a "three-step test" for determining whether to grant a defendant's motion for sentence reduction.  United States v. Jones, 980 F.3d 1098 (6th Cir. 2020).

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing

2

(4:22-CR-494-8)

> Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*Id.* at 1107-1108 (alterations and emphasis in original) (citations omitted). In considering a motion for sentence reduction, "district courts may deny [] motions [for sentence reduction] when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

A defendant is eligible to seek reduced sentence from a court after he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf or thirty days have elapsed since requesting that the warden of his facility initiate such action. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.")

In 2023, the Sentencing Commission amended United States Sentencing Guidelines § 1B1.13, the applicable policy statement, to align with the passage of the First Step Act. The Court concludes, therefore, that the policy statement, as amended, is now "applicable" to motions for sentence reduction filed in court by defendants. *See United States v. Livesay,* No. 3:18-CR-36-TAV-DCP-15, 2023 WL 8101845, at *6 (E.D. Tenn. Nov. 21, 2023) ("[T]he Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to inmate-filed motions for compassionate release is no longer consistent with the Guidelines.") The revised policy

3

(4:22-CR-494-8)

statement lists six circumstances of a defendant that a court may consider, in isolation or in combination: (1) medical condition, (2) age, (3) family circumstances, (4) whether defendant was a victim of abuse, (5) other reasons, and (6) unusually long sentence. Two of those six circumstances are pertinent to May. *See* U.S.S.G. § 1B.13(b). As explained below, the Court finds extraordinary and compelling reasons exist for reducing May's sentence; and finds that those reasons align with § 1B1.13, as amended; and are in accord with the goals of the Section 3553(a) factors.

### A. Exhaustion of Administrative Rights

A criminal defendant may move for compassionate release only after "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). May emailed a request for "compassionate release" to the warden on July 7, 2024. *See* Mot. for Sentence Reduction Under 18 U.S.C. § 3582 (ECF No. 448) at PageID #: 3280 and ECF No. 448-1 (copy of email). The warden did not respond to May's request. ECF No. 448 at PageID #: 3280. Because 30 days have passed since May emailed the warden, she has exhausted her administrative rights.

### B. Extraordinary and Compelling Reasons

May offers two extraordinary and compelling reasons warranting her sentence reduction under § 1B1.13. *See* Supp. to Mot. for Sentence Reduction (ECF No. 460). She argues that her 21-year-old daughter is incapacitated, meeting the "incapacitation of the caregiver of the defendant's minor child" policy justification, at U.S.S.G. § 1B1.13(b)(3)(A). If the Court finds that her daughter is incapacitated, May argues that the Court should find extraordinary and compelling circumstances justifying her a reduced sentence, because she is the only available

4

(4:22-CR-494-8)

caregiver for her children who are "immediate family members," in accord with U.S.S.G §1B1.13(b)(3)(D).  ECF No. 460 at PageID #: 3515.

  The Government counters that May's 21-year-old daughter is not "incapacitated" under the definitions of Black's Law Dictionary, the Uniform Probate Code, or the BOP's Policy Manual, because she is not suffering from a mental or physical disability that prohibits her *usual* functions or duties.  *See* Gov't Resp. in Opp'n to Mot. for Early Release (ECF No. 467); *see also* Suppl. to Gov'ts Resp. in Opp'n to Mot. For Early Release (ECF No. 474) (emphasis added).  The Government also contends that U.S.S.G. § 1B1.13(b)(3)(D) does not apply, "because subsection (3)(A) . . . already specifically addresses the type of family member at issue here: [May's] minor children."  ECF No. 467 at PageID #: 3537.  The Government also suggests that May's family's circumstances are not extraordinary and compelling, because "there remain others who can assist[.]"  ECF No. 467 at PageID #: 3566.  The Government's reasoning is not well taken.  A plain reading of the Guidelines can only lead to the conclusion that in order to qualify for compassionate release under § 1B1.13(b)(3)(A), a defendant need not show that no available alternative caretakers exist for their child.  As the U.S. District Court for the District of Maryland explained in *Cunningham*, "[i]f the Sentencing Commission sought to limit section 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available caregiver, it would have said so."  *United States v. Cunningham*, 2024 WL 4057004, at *9 (D. Md., 2024).

  As amended in 2023, the Sentencing Guidelines articulate examples of circumstances resulting in extraordinary and compelling reasons that support May's motion for sentence

5

(4:22-CR-494-8)

reduction—her family circumstances and the catchall, other reasons provision.[1] When ruling on motions for sentence reduction, the Sentencing Guidelines advise courts to consider, among other circumstances:

> (3) **Family Circumstances of the Defendant**.
>
> (A) *The death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) *The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.
>
> ****
>
> 5) **Other Reasons**. The defendant presents *any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4)*, are similar in gravity to those described in paragraphs (1) through (4).

---

[1] "The Commission, in promulgating general policy statements regarding the sentencing modification provision in section 3582(C)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. section 994(t).

6

(4:22-CR-494-8)

*See* U.S.S.G §1B1.13(b)(3) (alteration in original) (emphasis added), and § 1B1.13(b)(5) (emphasis added).

      At the threshold, it should be made clear that there is nothing *usual* about a 21-year-old being the sole caregiver for eight minor children. That said, the family circumstances provisions, alone, are sufficient justification to grant May's motion. If they were not, the catchall, "other reasons" provision, affords the Court adequate discretion to reduce the length of May's incarceration because of the clear presence of "any other circumstance or combination of circumstances" that are of a "similar gravity" to those "family circumstances" recognized by the Sentencing Guidelines.

      The best evidence of the gravity of May's family circumstances is presented by her own letter in support of her motion for sentence reduction. In ECF No. 460-1, May wrote:

> Dear Honorable Judge Pearson,
>
> I am currently incarcerated at Alderson FPC and am writing to you about my family's situation with the hope that you can help us. Six of my children are underage, and my twenty one year old daughter [] bears the enormous burden of caring for them in addition to her own two children. Of these eight children that she is responsible for, three of them are only a year old (my one year old twins plus her own baby). Then there is a six year old, an eleven year old, two fourteen year olds, and a sixteen year old. *Aaliyah is a single mother and has no immediate family or other relatives who can assist her*. My children's father is also incarcerated [] *Aaliyah does not have any legal guardianship of my other children, which means that she can not enroll them for school next year or take them to doctor's appointments*. For this reason my minor children had to stop going to therapy once I was incarcerated. Aaliyah works full time [] but worries that she will lose her job after being absent or late to work multiple times due to childcare related emergencies. She cannot afford daycare for the kids. Recently she was given a "last chance" by her employer. If she were to lose her job, she would not be able to make her car or rent payments, which would leave my family homeless and without transportation. They are already at risk of homelessness because there are more people packed into their two bedroom rental than the lease allows.

(4:22-CR-494-8)

> *Aaliyah is becoming increasingly overwhelmed physically, financially, mentally, and emotionally.* She battles severe depression due to the loss and trauma that she has encountered throughout her life. In 2007 my brother, Aaliyah's uncle who was very dear to her, was murdered. In 2012 I was sent to prison for the next three years, during which time Aaliyah stayed with our aunt and was molested by our aunt's grandchildren. In 2020 Aaliyah's grandmother passed from COPD. Aaliyah's little sister was murdered the following year in 2021. In 2022, their dad died of cancer. *This year Aaliyah suffered the loss of her older brother, and after that I was taken away to incarceration, leaving her completely without support and saddled with an immense burden.*

*Id* (emphasis added).

There is more, much more, in the three and a half-page handwritten letter but, in the excerpt above, May has clearly established that Aaliyah is incapacitated. U.S.S.G §1B1.13(b)(3)(A) and (D); (b)(5). Courts have found that a caretaker's inability to support themselves can qualify as incapacitation if their inability diminishes their availability to provide for minor children. *See, e.g.*, United States v. Foster, No. 5:18-CR-00472, 2024 WL 3715442, at *3 (N.D. Ohio Aug. 8, 2024) (caretaker's drug addiction and mental health challenges constituted incapacitation, because those disabilities prevented the caretaker from caring for her children, herself, and removal of the caretaker responsibility was "necessary to prevent immediate or threatened physical or emotional harm."); *see also* United States v. Smith, No. 2:21-CR-00279-CDS-EJY, 2024 WL 4556521, at *5 (D. Nev. Oct. 22, 2024) (caregiver qualified as incapacitated after she was "unable to adequately clothe, feed, or shelter [the child]" after considering that she slept in a car with a missing window with the two children, and the social worker felt "very concerned" about the two minor children in her care).

Courts have also considered the best interests of the children, and the suitability of the minor child's caregiver. *See* United States v. London, No. 3:17-CR-00176, 2021 WL 1379394, at *1 (M.D. Tenn. Apr. 12, 2021) ("Courts have been sensitive to instances where alternate

8

(4:22-CR-494-8)

family members caring for the child would not be in the minor child's best interest.") *United States v. Walker*, No. CR 19-928 (MAS), 2024 WL 580152, at *6 (D.N.J. Feb. 13, 2024) (defendant's twenty-year-old daughter with her own support needs was not considered a caregiver to her epileptic and diabetic sibling, because the twenty-year-old neglected her sibling by failing to give him insulin).

At the age of 21, Aaliyah was forced to take on the impossible task of feeding, clothing and housing, *i.e.*, "caring for" eight children, three of whom were one-year-olds! Just imagine that before adding the daunting task of, at the same time, caring for a six-year-old, an eleven-year-old, two fourteen-year-olds, a sixteen-year-old, and herself. ECF No. 460-1 at PageID #: 3519. At sentencing, May intended that her sister in Atlanta, Georgia would care for her minor children. That plan failed when May's sister became unable to care for the children, just two weeks after the start of May's incarceration. Aaliyah had no choice but to try to preserve her family. She had no other family members to rely on for assistance. Aaliyah's father died of cancer, her sibling's father is also incarcerated, her grandmother passed away in 2020, her older brother passed away this year, and her aunt in Atlanta, Georgia declined to take in the kids. ECF No. 460-1 at PageID #: 3519. Caring for eight children has jeopardized Aaliyah's employment status, and her employer has given her one "last chance" that could result in the loss of her job—the only source of income—which in turn, would cause the family to be evicted from their two-bedroom rental. ECF No. 460-1 at PageID #: 3519.

Not only was Aaliyah forced to care for eight children with no financial, mental, or emotional assistance, she and the children were under the threat of persistent gun violence. Before May surrendered to federal custody on June 13, 2024, a random shooting in the neighborhood resulted in the death of May's ten-year-old daughter, Aaliyah's younger sister.

9

(4:22-CR-494-8)

*See* Reply Brief for Mot. for Sent. Reduction (ECF No. 471). The family's residence has been the target of gun violence three times since June 13, 2024, and has since become riddled with bullets. In one incident, officers found eleven spent rounds near the house, and one of the fired bullets penetrated a bedroom window. In another incident, police officers located eight rifle casings, and one spent pistol casing that damaged the home.

Without legal guardianship of her minor siblings, Aaliyah is unable to attend to the basic medical and educational needs of children who require mental health therapy and schooling. On her own, Aaliyah cannot provide the needed medical or emotional support for the children who have experienced trauma and anxiety from the threats of gun violence. None of her siblings can seek therapy (ECF No. 460 at PageID #: 3519-21), yet the threat of gun violence has caused them a heightened sense of fear and vulnerability to gun violence. ECF No. 460-1 at PageID #: 3523. As defense counsel argued, Aaliyah faces a monumental task that she is mentally, emotionally, and financially unprepared to provide. He argued that she is on the "verge" of incapacitation from the weight of caring for eight children when she is barely an adult and requires support for her own myriad issues.

The Court finds by a preponderance of evidence that Aaliyah meets the definition of "incapacitation of the caregiver of the defendant's minor child" under U.S.S.G. § 1B1.13(b)(3)(A) and (b)(5). The choice of leaving May in prison for the next sixteen months or reducing her sentence to allow her an earlier start to making a home for her children, ideally before the beginning of the next school year, is not a difficult choice. In the opinion of the undersigned, it is the only right-thinking one.

A reduction in May's sentence is consistent with the *applicable* policy statements issued by the Sentencing Commission in 2023, especially the "other reasons" provision that urges

10

(4:22-CR-494-8)

courts to consider the collective gravity of a defendant's circumstances. As the Chair of the Sentencing Commission declared, "to do justice, judges must be able to modify sentences whenever new 'extraordinary and compelling' reasons arise.'" *See* Carlton W. Reeves, Chair, U.S. Sent'g Comm'n, remarks as Prepared for Delivery by Chair Carlton W. Reeves (Apr. 5, 2023). And, as explained below, reducing May's sentence is in accord with the goals of section 3553(a).

### C. 18 U.S.C. § 3553(a) Factors

"Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with § 1B1.13, the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (citing 18 U.S.C. § 3582). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The relevant section 3553(a) factors support May's release.

11

(4:22-CR-494-8)

- *The nature and circumstances of the offense* weigh against sentence reduction. May pleaded guilty and was sentenced to 24 months in prison for the Drug Conspiracy charge in violation of (1) 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), and the Distribution of a Controlled Substance charge in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See* ECF No. 321. It cannot be disputed that May's conduct was dangerous to the very community in which she and her children lived. She sold and conspired with others to sell drugs in her home and discussed her involvement in the drug trade in front of her children. When ranked by quantity of drugs trafficked, May scored fifth highest among 14 co-conspirators. Nevertheless, the adverse weight of this factor is overshadowed by the factors that encourage her sentence reduction.

- *The history and characteristics of May* weigh in favor of sentence reduction. The Government makes a reasonable argument that May's history concerning crimes involving drugs, the sale of drugs, circumstances involving firearms, and prior situations compromising her children's safety suggests an incompatibility with a sentence reduction. ECF No. 467 at PageID #: 3539. Regarding more recent events, however, the Court notes that May was compliant with the terms of her pretrial release for 21 months before her imprisonment, and she has served her time in custody laudably. She has not received any disciplinary violations and has participated in programming, volunteers, and serves as a mentor to other young women. The consistent voices of support from family, mentors, a fellow inmate, and counselors also reinforce that May is no longer the same woman that she was at the time she committed the offenses for which she was imprisoned.

(4:22-CR-494-8)

> Additionally, it can hardly be argued that May has not and will continue to face serious repercussions for her criminal past. She has, at least temporarily, lost custody of her minor children and unfairly burdened Aaliyah. None can reasonably doubt that she will likely spend the rest of her life coping with immeasurable regret over the effect of her criminal past on her children's lives.
>
> - *The need to protect the public from further crimes of the defendant* supports a sentence reduction. May admitted her engagement in the drug conspiracy. Her motivation, regrettably, arose out of financial desperation. Throughout the two-year time span of the conspiracy, she trafficked 140 grams of cocaine, and 140 grams of cocaine base (crack). *See* ECF No. 321 at PageID #: 1780. Since then, she has expressed remorse and accepted responsibility for her offense. As earlier indicated, she was compliant with her 21-month term of pretrial release, maintained employment, and even obtained her GED. May has received approval from her previous employer to return to work upon her release. The promise of ready employment is an important guardrail against her recidivating out of financial desperation. Given the totality of May's circumstances, it would be unreasonable to think her sentence reduction is a threat to the safety of the public. She will be under location monitoring until a bed is available for her at a residential reentry center where she will reside for six months. Proximity to her children will give Aaliyah much needed financial and emotional relief and restore the responsibility of child rearing where it belongs, thus empowering May to help her children develop into productive law-abiding citizens.

13

(4:22-CR-494-8)

- *The need to provide May with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* supports granting May's sentence reduction.  As indicated above, May obtained her GED even before reporting to prison.  Her continuation with substance abuse and mental health treatment, including medically assisted treatment, are paramount to her coping with her addiction and the trauma she and her children have experienced.  While treatment was available to May in prison, her children, who have committed no crimes, need her to advocate for and manage their treatment in the community.

- *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense* supports sentence reduction.  Defendant's response to prosecution and incarceration have shown her to have an increased respect for the law.  It bears repeating, again, that for the 21 months before her incarceration, May was compliant with the terms of her pretrial release; and she committed no infractions or disciplinary violations while in custody.  There is much room to believe that her separation from her children has adequately punished her and will deter her and others from further criminal conduct.  Against the record created for this ruling, the likelihood that May will constitute a threat to the community upon her release is minimal.  The undersigned does not believe that May's reduced sentence will send a message that the judiciary has gone soft on drug traffickers.  If the Government is right and this ruling opens the floodgates, courts will do their duty and decide each motion on its own merits.

14

(4:22-CR-494-8)

In sum, the Court finds that the 3553(a) factors favor granting Defendant a reduction in sentence.

### III.    Conclusion

People change.  Or perhaps it is more apt to say that people are changed by their circumstances.  Pursuant to 18 U.S.C.A. § 3582 and relying on the amended policy statement of the Sentencing Guidelines, § 1B1.13, it is the duty of a reviewing court to grant a sentence reduction when extraordinary and compelling reasons so require.  When May's familial circumstances are considered, in accord with the law, Sentencing Guidelines, and principles of fairness and justice, a reduction in sentence is both appropriate and warranted.  The Court hereby grants May's motion for sentence reduction.

Accordingly,

1. Christina May's motion for sentence reduction is granted.
2. Christina May's term of imprisonment is reduced to time served for Counts 1 and 18, concurrently.  Her term of supervised release remains three years, to be served concurrently for Counts 1 and 18.  The GED requirement is no longer imposed.  May shall reside in a residential reentry center for the first six months of her release and be under location monitoring until a bed is available for her.
3. An Amended Judgment has been separately entered.

IT IS SO ORDERED.

| | |
|---|---|
| December 19, 2024 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

15